IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STORAGE CAP MANAGEMENT LP,** | Case No. 2:19-cv-4328 |
| Plaintiff, | |
| v. | Judge James L. Graham |
| **ROBARCO, INC. AND SPARESPACE STORAGE, LLC,** | Magistrate Judge Kimberly A. Jolson |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff's Motion to Disqualify Defendants' Counsel. (ECF No. 15.) Plaintiff Storage Cap Management LP ("Storage Cap") moves to disqualify Defendants' counsel, Akerman LLP (the "Akerman firm"), because a partner at the Akerman firm, Roy Zachariah, previously advised Storage Cap concerning several trademarks, including the STORE SPACE trademarks, which are currently at issue in the present case and in three disputes pending before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("USPTO"). David Brafman of the Akerman firm represents Defendant SpareSpace Storage, LLC ("SSL") in each of those disputes.

For the reasons that follow, Plaintiff's Motion to Disqualify Defendants' Counsel (ECF No. 15) is **GRANTED**.

**I. BACKGROUND**

The present action is the fourth of four pending adversarial legal proceedings between the parties concerning: 1) whether there is a likelihood of confusion between Plaintiff's STORE SPACE trademarks and Defendant SSL's SPARESPACE STORAGE trademark and 2) which party's trademark has priority over the other.

1

On December 13, 2017, Chris Harris, Chief Executive Officer ("CEO") of Storage Cap, emailed Roy Zachariah, a partner at the Akerman firm, seeking legal advice on selecting a trademark for his new self-storage business. (Harris Decl. ¶ 4 Ex. A, ECF No. 15-1 at 52; Harris Suppl. Decl. ¶¶ 9, 11, ECF No. 23-2 at 247.) Mr. Harris's initial email to Mr. Zachariah included a signature block indicating he was CEO of Storage Cap Investments, the investment vehicle for Storage Cap. (Harris Suppl. Decl. ¶ 10; ECF No. 15 at 42, n.1.) On December 20, 2017, Storage Cap Management LP was registered in Nevada as a limited partnership. (Harris Suppl. Decl. ¶ 8; ECF No. 21-4 at 135–36.)

Throughout the remainder of December 2017, Mr. Harris and Mr. Zachariah spoke over the phone and via email. During these conversations, the two discussed proposed Storage Cap trademarks and company branding strategies. (Harris Decl. ¶ 5.) Mr. Harris claims their trademark and branding discussions included confidential Storage Cap information. (*Id.* at ¶ 7.)

Mr. Zachariah conducted trademark availability searches related to the proposed Storage Cap trademarks, including the STORE SPACE trademarks, and provided the search results to Mr. Harris, along with his analysis of each trademark's availability. (*Id.* at ¶ 6; ECF No. 15 at 241.) Mr. Zachariah also offered legal advice on the USPTO application process, the standard for registrability and infringement, and Storage Cap's proposed branding. (*Id.* at ¶ 6.) The Akerman firm never sent Mr. Harris an engagement letter, and Mr. Harris never paid the firm a retainer. (Zachariah Decl. ¶¶ 7–8, ECF No. 22 at 228.)

In Mr. Harris's fourth and final email to Mr. Zachariah, dated December 30, 2017, he referenced the possibility of trademark registration work by stating, "we'll engage you to trademark it for us . . ." (Harris Suppl. Decl. ¶ 7; Zachariah Decl. ¶ 5.) Mr. Zachariah never heard from Mr. Harris again. (Zachariah Decl. ¶ 6.)

On May 30, 2018, Storage Cap, through other counsel, filed applications to register its STORE SPACE trademarks with the USPTO. On January 25, 2019, the Akerman firm filed Defendant SSL's application to register its SPARESPACE STORAGE mark. On June 13, 2019, the Akerman firm filed Notices of Opposition on behalf of Defendant SSL opposing registration of Storage Cap's STORE SPACE trademarks. Defendant SSL alleges that Storage Cap's STORE SPACE marks are confusingly similar to SSL's SPARESPACE STORAGE mark. On July 25, 2019, Plaintiff filed its Notice of Opposition opposing registration of the SPARESPACE STORAGE mark.

On September 27, 2019, Storage Cap filed this action seeking a declaratory judgment that: 1) its use of its STORE SPACE trademarks is not likely to cause confusion with the SPARESPACE STORAGE mark or Defendants, and 2) Defendants' rights to the SPARESPACE STORAGE mark (if any) are limited to a small geographic area in and around Grove City, Ohio, if Defendants, in fact, have been using the SPARESPACE STORAGE mark in Grove City, Ohio continuously since before April 23, 2018. (ECF No. 1.)

On October 7, 2019, Storage Cap President and Chief Operating Officer, Rob Consalvo, discovered an old email communication indicating Mr. Zachariah's association with the Akerman firm. (Consalvo Decl. ¶ 3, ECF No. 23-1 at 244.) Mr. Consalvo and Mr. Harris immediately informed counsel of Mr. Consalvo's discovery. (Suppl. Harris Decl. ¶ 6.) The next day, Storage Cap's counsel, Thomas Holt, sent a letter to attorney David Brafman of the Akerman firm, notifying him of the conflict and requesting that he withdraw from representing Defendants in all adverse proceedings against Storage Cap concerning Storage Cap's use of its STORE SPACE

trademarks. (Ex. 1, ECF No. 15-2 at 58.) Mr. Holt's letter also sought clarification as to whether the Akerman firm also represented Defendant Robarco, Inc. ("Robarco").[1]

Mr. Brafman responded to Mr. Holt's letter on October 14, 2019. During a telephone call with Mr. Holt, Mr. Brafman relayed that he did not believe there was a conflict of interest and refused to withdraw from the case. (Holt Decl. ¶ 3, ECF No. 15-2 at 55.) On October 30, 2019, the Akerman firm confirmed it was also representing Defendant Robarco. (Holt Suppl. Decl. ¶ 2, ECF No. 23-3 at 249.)

Storage Cap has not consented to the Akerman firm's representation of Defendants. Storage Cap filed the instant motion on November 13, 2019. (ECF No. 15.) On December 4, 2019, Defendants filed their response in opposition. (ECF No. 20.) Storage Cap filed its reply brief on December 18, 2019. (ECF No. 23.)

On February 21, 2020, the Court ordered Storage Cap to produce copies of the email communications and affidavits detailing the contents of the alleged verbal communications it relies upon for the Court's *in camera* review. (ECF No. 24.) On March 6, 2020, Storage Cap submitted Plaintiff's Second Supplemental Declaration of Chris Harris and copies of the email communication between Messrs. Harris and Zachariah in support of its motion to disqualify. (ECF No. 25.)

## II.  LEGAL STANDARD

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *Kitchen v. Aristech Chem.,* 769 F. Supp. 254, 256 (S.D. Ohio 1991). The power to disqualify an attorney from a case "is incidental to all courts, and a district court is obliged to consider unethical conduct by any attorney in connection with any

---

[1] Robarco, Inc. is an Ohio corporation that operates a self-storage facility in Grove City, Ohio under the name "Spare Space Storage." (Compl. ¶¶ 4, 18, ECF No. 1 at 2, 5.)

4

proceeding before it." *SST Castings, Inc. v. Amana Appliances, Inc.,* 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002). Even so, courts should treat motions to disqualify counsel "with extreme caution" because denying an opponent the services of counsel is a powerful weapon that can be misused. *Id.* at 865–66 (citing *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982)); *see also Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir. 1988).

In considering a motion to disqualify counsel, a court must use its discretion in balancing the "competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of his choice." *Kitchen,* 769 F. Supp. at 257. "The extreme sanction of disqualification should only be utilized when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings,* 250 F. Supp. 2d at 865 (quoting *Kitchen,* 769 F. Supp. at 257). Following the Sixth Circuit's decision in *Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007), this Court looks to the Ohio Rules of Professional Conduct for guidance in addressing attorney disqualification issues.[2]

---

[2] *See Escort, Inc. v. NoLimits Enters.,* No. 1:18-cv-323, 2018 U.S. Dist. LEXIS 218569, at *7 (S.D. Ohio Nov. 20, 2018) (Litkovitz, M.J.); *Flood v. Reed,* No. 2:16-CV-778, 2017 U.S. Dist. LEXIS 37978, at *8 (S.D. Ohio Mar. 16, 2017) (Smith, J.); *O'Brien v. Brunner*, No. 2:15-cv-2803, 2016 U.S. Dist. LEXIS 34606, at *7–8 (S.D. Ohio Mar. 17, 2016) (Smith, J.); *Big Idea Co. v. Parent Care Res., LLC*, No. 2:11-cv-1148, 2012 U.S. Dist. LEXIS 131239, at *7 (S.D. Ohio Sep. 14, 2012) (King, M.J.); *Khan v. Cellco P'ship,* No. 1:10-cv-118, 2011 U.S. Dist. LEXIS 122894, at *4 n.2 (S.D. Ohio Sep. 8, 2011) (Litkovitz, M.J.); *R.E. Kramig Co., Inc. v. Resolute Management, Inc*., No. 1:07-cv-658, 2009 U.S. Dist. LEXIS 48838, at *10 (S.D. Ohio May 18, 2009) (Dlott, C.J.); *OneBeacon America Ins. Co. v. Safeco Ins. Co*., 1:07-cv-358, 2008 U.S. Dist. LEXIS 82833, at *5 (S.D. Ohio Aug. 25, 2008) (Weber, J.).

The Court's local rules incorporate the ethical standards of the Ohio Rules of Professional Conduct. *See* S.D. Ohio Local Civ. R. 83.3(h); Model Fed. R. of Disciplinary Enforcement IV(B). Two of the Ohio Rules of Professional Conduct are implicated in this case.

Under Rule 1.9 (Duties to Former Clients), "Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Ohio R. Prof. Cond. 1.9(a).

The imputation of a conflict of interest is governed by Rule 1.10, which provides in pertinent part:

(a) While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Ohio R. Prof. Cond. 1.10(a).

In evaluating Plaintiff's Motion to Disqualify Defendants' Counsel, the Court thus examines whether an attorney-client relationship existed between Storage Cap and Mr. Zachariah of the Akerman firm, and, if so, whether his representation included a matter that is the same or substantially related to the subject matter of this lawsuit. *SST Castings,* 250 F. Supp. 2d at 867. "The party seeking disqualification has the burden of proof to show that 'the matter or cause of action of the previous representation of the former client is substantially related to the matters of the current suit.'" *Escort, Inc. v. NoLimits Enters.*, No. 1:18-cv-323, 2018 U.S. Dist. LEXIS

218569, at *8–9 (S.D. Ohio Nov. 20, 2018) (quoting *Best v. Mobile Streams, Inc.*, No. 1:12-cv-564, 2013 U.S. Dist. LEXIS 3313, at *4 (S.D. Ohio Jan. 9, 2013)).

## III. DISCUSSION

### A. The Parties' Arguments

Storage Cap alleges that Mr. Zachariah, a partner at the Akerman firm, provided Storage Cap with legal advice concerning the use and registration of the STORE SPACE trademarks in connection with self-storage rental services, which constitutes a matter that is the same or substantially related to the subject matter of this case. Storage Cap argues that under Ohio R. Prof. Cond. 1.9 and 1.10, the Akerman firm is disqualified from representing Defendants in this case.

Defendants counter that Storage Cap cannot meet its burden of proof that it had a prior attorney-client relationship with Mr. Zachariah, because their communications do not establish a reasonable belief that Mr. Zachariah represented Storage Cap. Defendants further state that Storage Cap has failed to prove that any of the alleged confidential information provided to Mr. Zachariah would materially advance the position of Defendants in this litigation. Defendants also assert that Storage Cap waived its right to seek disqualification of Defendants' counsel. The Court addresses each of these arguments in turn.

### B. The Existence of an Attorney-Client Relationship

"An attorney-client relationship 'includes the representation of a client in court proceedings, advice to a client, and any action on a client's behalf that is connected with the law.'" *Hamrick v. Union Twp., Ohio*, 79 F. Supp. 2d 871, 875 (S.D. Ohio 1999) (quoting *Landis v. Hunt*, 80 Ohio App. 3d 662, 669–70, 610 N.E.2d 554, 558–59 (1992)). In determining the existence of an attorney-client relationship, the "test is essentially 'whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of

the putative client.'" *Id.* (quoting *Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 261, 611 N.E.2d 873, 876 (Ohio 1992)). "[N]either a formal contract nor the payment of a retainer is necessary to trigger the creation of the attorney-client relationship." *Cuyahoga Cnty. Bar Ass'n v. Hardiman,* 100 Ohio St. 3d 260, 262, 798 N.E.2d 369, 373 (2003).

Defendants first contend that Storage Cap has failed to provide sufficient evidence concerning communications between Messrs. Harris and Zachariah. Storage Cap's submission of Mr. Harris's second supplemental declaration, along with copies of the email communications between Messrs. Harris and Zachariah cures this deficiency. The Court's review of the email correspondence between Messrs. Harris and Zachariah conclusively establishes that Mr. Harris sought legal advice from Mr. Zachariah on multiple occasions, received legal advice in response to his inquiries, and believed that an attorney-client relationship existed such that Mr. Zachariah would advance his company's interests.

Defendants next argue that an attorney-client relationship could not have existed because the initial communication between Mr. Zachariah and Mr. Harris concerned Mr. Harris, as an individual, and not Storage Cap, as Storage Cap Management LP did not formally exist on December 13, 2017. Defendants cite Mr. Zachariah's failure to recall Mr. Harris even mentioning Storage Cap as further evidence of this point. (Zachariah Decl. ¶ 4.) Defendants conclude that since Storage Cap was neither an existing nor identified client during Mr. Zachariah's conversations with Mr. Harris, there is no prior attorney-client relationship between Mr. Zachariah and Storage Cap.

Even though Storage Cap was not a registered business entity when Mr. Harris first contacted Mr. Zachariah on December 13, 2017, this is not fatal to the existence of an attorney-client relationship between Mr. Zachariah and Storage Cap. Mr. Harris's first email to Mr.

8

Zachariah included a signature block indicating he was CEO of Storage Cap Investments, and he represented that he was seeking legal advice on selecting a trademark and brand for his new self-storage business. Storage Cap became a legally-recognized entity a week later on December 20, 2017.

It is not uncommon for a lawyer's initial client to be the founder of an organization during the pre-formation period and later transition to a corporation, for example, acting through its directors or officers.[3] This is because "upon the effective date of its incorporation, the corporation becomes a legal entity that exists separate and distinct from those who are using the corporate form to conduct their business and who may be authorized to act on its behalf."[4] As a legally-recognized entity, a corporation is capable of establishing an attorney-client relationship through its authorized representatives acting on its behalf.[5]

Similarly, upon Storage Cap's formation as a limited partnership, the attorney-client relationship between Mr. Harris, as founder of Storage Cap, and Mr. Zachariah transitioned to an attorney-client relationship between Storage Cap and Mr. Zachariah by way of Mr. Harris, as CEO of Storage Cap, acting on its behalf.[6] From December 20, 2017 until December 30, 2017, Mr. Harris continued seeking legal advice on proposed trademarks and branding considerations for the newly formed self-storage business. Mr. Harris's communications with Mr. Zachariah on behalf of Storage Cap from December 20, 2017 forward are sufficient to form an attorney-client relationship.

---

[3] Carl A. Pierce, *Representing One Client at A Time in Connection with the Formation and Organization of a Corporation,* 8 TRANSACTIONS: TENN. J. BUS. L. 327, 330 (2007); *see also Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994) (finding that once a partnership was formed, the attorney-client relationship between a law firm and a partnership pre-empted the law firm's prior representation of individual partners).
[4] Pierce, *supra* note 2, at 333.
[5] *Id.*
[6] *See Hopper,* 16 F.3d at 96 ("There is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a lawyer represents.") (quoting ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 91-361 (1991)).

Finally, Defendants suggest that even if the Court determines that Mr. Harris was communicating with Mr. Zachariah on behalf of Storage Cap, their communications were preliminary in nature, so that Mr. Harris could decide whether to retain the Akerman firm. Here, Defendants point to Mr. Harris's final email using the future tense of "we'll engage you" as proof that Storage Cap had not yet engaged the Akerman firm as counsel. (ECF No. 20 at 94.) Defendants also draw the Court's attention to the undisputed facts that the Akerman firm never sent Mr. Harris an engagement letter, Mr. Harris never paid the firm a retainer, and Storage Cap ultimately hired a different lawyer from a different firm to register Storage Cap's STORE SPACE trademarks.

The Court nevertheless finds that Mr. Harris's December 30, 2017 email statement that "we'll engage you to trademark it for us" does not negate a preexisting attorney-client relationship with Mr. Zachariah. Mr. Harris's use of the future tense with regard to Mr. Zachariah later registering Storage Cap's ultimately chosen trademark is simply a suggestion of additional work to come. It is immaterial whether Storage Cap eventually hired Akerman to submit Storage Cap's trademark application. *Big Idea Co. v. Parent Care Res., LLC*, No. 2:11-cv-1148, 2012 U.S. Dist. LEXIS 131239, at *4–10 (S.D. Ohio Sep. 14, 2012) (determining an attorney-client relationship existed where attorney performed trademark search and rendered his professional opinion via email, even though he never submitted the trademark application). Despite Defendants' insistence, the lack of an engagement letter or retainer fee is also of no consequence. Ohio law does not require a written agreement or the payment of a retainer to trigger the creation of an attorney-client relationship. *Cuyahoga Cnty. Bar Ass'n,* 798 N.E.2d at 373.

The salient facts are that Mr. Harris sought legal advice from Mr. Zachariah on behalf of Storage Cap, and that Mr. Zachariah performed a trademark search and offered his professional

opinion on federal registration of Storage Cap's proposed trademarks and branding considerations. Storage Cap has provided ample proof that these communications took place. The evidence shows that Storage Cap, acting through Mr. Harris, reasonably believed that an attorney-client relationship existed, and that Mr. Zachariah was advancing the interests of Storage Cap. The Court therefore concludes that an attorney-client relationship existed between Mr. Zachariah and Storage Cap.

### C. Substantially Related Matter

A "substantially related matter" is "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Cond. 1.0(n).

In determining whether matters are "substantially related," this Court and the Ohio Rules of Professional Conduct recognize that "[k]nowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude representation, and the nature of the services performed for the former client is enough to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." *Best v. Mobile Streams, Inc.*, No. 1:12-cv-564, 2013 U.S. Dist. LEXIS 3313, at *12–14 (S.D. Ohio Jan. 9, 2013) (citing Ohio R. Prof. Cond. 1.9, Comment (3)). Ohio courts examining this issue have determined that "matters are substantially related if there is some 'commonality of issues' or a 'clear connection' between the subject matter of the former representation and that of the subsequent adverse representation." *Wynveen v. Corsaro*, 2017-Ohio-9170, ¶ 27, 106 N.E.3d 130, 138 (Ct. App.) (citations omitted).

Storage Cap claims there is little doubt that Mr. Zachariah previously represented Storage Cap in a substantially related matter, as he provided legal advice on the use and registration of the STORE SPACE trademarks, which are at the very core of the current adversarial proceedings between Storage Cap and Defendants.

As proof of its contention that Mr. Zachariah's legal advice is substantially related to the present suit, Storage Cap points to the first four interrogatories it received from Defendants in the USPTO proceedings, targeting Storage Cap's trademark selection and adoption process. For example, "Identify each person who received or reviewed the results of any trademark search, investigation, or other inquiry conducted by or for Applicant concerning the availability to use or register the Challenged Mark." (ECF No. 23 at 238.) Storage Cap also points out that Mr. Zachariah will likely be a witness for one or both parties concerning Storage Cap's trademark selection and adoption process.

While Storage Cap insists that the present matter is the same matter Mr. Zachariah previously advised it on, Defendants focus on the latter portion of the definition of "substantially related matter." Defendants emphasize that a "substantially related matter" must be "one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." It is here that Defendants claim that Storage Cap fails to meet its burden. To bolster their claim, Defendants highlight Mr. Zachariah's statement that, "Mr. Harris did not provide me with confidential information bearing on the issues raised in . . . this action." (Zachariah Decl. ¶ 9.)

Defendants' argument falls short for numerous reasons. First, given the use of the disjunctive "or," it is enough for Storage Cap to satisfy the first part of the definition of

"substantially related matter," as being "one that involves the same transaction or legal dispute," as a disjunction only requires that one of a number of alternatives be true.[7]

Furthermore, the email communication between Messrs. Harris and Zachariah confirms that Storage Cap not only consulted Mr. Zachariah about the availability of several proposed trademarks and the trademark registration process, but Storage Cap consulted Mr. Zachariah about the very trademarks at issue here, the STORE SPACE trademarks. By filing this lawsuit, Storage Cap is attempting to establish that its STORE SPACE trademarks do not create a "likelihood of confusion" over Defendant SSL's SPARESPACE STORAGE trademark and which party's trademark has priority. The Court notes the similarity in Storage Cap's initial concerns about the availability, registrability, and infringement of its proposed STORE SPACE trademark and its present concerns about the availability and registration of the STORE SPACE trademarks it ultimately applied to register. These factors alone overwhelmingly constitute a substantially related matter, as there is a clear connection between the subject matter of Mr. Zachariah's former representation of Storage Cap and that of the Akerman firm's subsequent adverse representation of Defendants.

Moreover, contrary to Defendants' assertions, Mr. Zachariah's legal advice to Storage Cap does create a substantial likelihood that he acquired confidential information from Storage Cap that would materially advance Defendants' interests. The email correspondence between Messrs. Harris and Zachariah contains the results of Mr. Zachariah's trademark search and related

---

[7] "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); "It is a basic principle of statutory construction that terms joined by the disjunctive 'or' must have different meanings because otherwise the statute or provision would be redundant." *United States v. Hill,* 79 F.3d 1477, 1482–83 (6th Cir.1996).
 "Disjunction, in logic, [is the] relation or connection of terms in a proposition to express the concept 'or'; it is a statement of alternatives." Britannica.com, https://www.britannica.com/topic/disjunction-logic (last visited March 10, 2020); "Also called disjunctive . . . a compound proposition that is true if and only if at least one of a number of alternatives is true." Dictionary.com, https://www.dictionary.com/browse/disjunction (last visited March 10, 2020).

investigation into Storage Cap's ability to use or register the STORE SPACE trademarks. Mr. Zachariah's previously rendered legal advice has direct bearing on the issues before this Court. Defendants' interests are adverse to Storage Cap's interests, and the Court concludes that the information Mr. Zachariah obtained during the course of his previous representation of Storage Cap would materially advance Defendants' position in the present litigation.

### D. Waiver of the Right to Seek Disqualification

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *In re Valley-Vulcan Mold Co.,* 5 Fed. App'x. 396, 401 (6th Cir. 2001) (quoting *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983)).

Defendants argue that Storage Cap failed to move promptly to disqualify counsel and thus waived its right to seek qualification of Defendants' counsel. Key to the Court's analysis is whether Storage Cap knowingly refrained from asserting its right to seek disqualification. The Court finds it did not.

Storage Cap has submitted evidence in support of its claim that it did not learn of the conflict between Storage Cap and the Akerman firm until October 7, 2019. As soon as Storage Cap learned of the conflict, it informed counsel, and Storage Cap's counsel promptly notified opposing counsel of the identified conflict. Shortly after confirming additional relevant details concerning the Akerman firm's representation of both Defendants, Storage Cap filed its motion to disqualify Defendants' counsel. Therefore, Storage Cap is not deemed to have waived its right to seek disqualification of Defendants' counsel, as it promptly asserted that right upon learning of the conflict.

14

## IV. CONCLUSION

The Court finds that Storage Cap has met its burden of proof that Mr. Zachariah would be prohibited from representing Defendants under Ohio R. Prof. Cond. 1.9(a) due to his previous attorney-client relationship with Storage Cap and the circumstances present in this case. *Onebeacon Am. Ins. Co. v. Safeco Ins. Co.*, No. C-1-07-358, 2008 U.S. Dist. LEXIS 82833, at *7 (S.D. Ohio Aug. 25, 2008) (Rule 1.9(a)'s "[u]se of the mandatory term 'shall' requires disqualification.")). Similarly, Storage Cap has also satisfied its burden of proving that all of the elements of Ohio R. Prof. Cond. 1.10(a) have been met, and Mr. Zachariah's mandatory disqualification is thereby imputed to the Akerman firm.

The Court concludes that the public interest in requiring professional conduct by an attorney outweighs Defendants' competing interest of continued representation by the Akerman firm, especially since Defendants also have other counsel representing them. Accordingly, Plaintiff's Motion to Disqualify Defendants' Counsel (ECF No. 15) is **GRANTED**. Furthermore, due to the resolution of Plaintiff's Motion to Disqualify Defendants' Counsel, the stay imposed in the Court's November 22, 2019 Order (ECF No. 19) is hereby lifted.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 11, 2020